IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANTINO CARRERA,<br><br>               Petitioner,<br><br>  vs.<br><br>JILL L. BROWN, as Warden of<br>San Quentin State Prison,<br><br>               Respondent. | Case No. CIV. F-90-478-A.I.-P<br><br><u>DEATH</u> <u>PENALTY</u> <u>CASE</u><br><br>ORDER PARTIALLY DENYING PETITIONER'S REQUEST TO CONDUCT DISCOVERY AND SETTING DUE DATE FOR RESPONDENT'S OPPOSITION |

      This matter is before the Court on the motion of Petitioner Constantino Carrera ("Carrera") for leave to conduct discovery by propounding a document production request. The documents requested are variously believed to be in the possession of the Kern County District Attorneys' Office, the Kern County Sheriff's Department, the Kern County Superior Court, "any" Kern County medical or mental health department or facility (with information pertaining the Carrera's mental health or drug use), and the Attorney General's Office. For discovery granted by the Court, Carrera will be entitled to any of the approved documents which are in the possession, custody, or control of the Attorney General's Office. For documents in the possession, custody, or control of the other entities, with the exception of the Kern County Superior Court, Carrera will have to serve subpoenas duces

tecum.[1]  The actual Request for Production of Documents incorrectly seems to presume that the Warden and her counsel (the Attorney General), are responsible for producing the documents specified.

No opposition of other response has been received from Respondent Jill L. Brown, As Warden of San Quentin State Prison (the "Warden"), but the Court understands that an opposition brief is intended to be filed within 30 days from the filing of Carrera's motion.  Not all of the seven categories of documents specified in the motion, however, need be addressed by the Warden.  This conclusion follows from the fact that the Court already addressed permissible areas of investigation Carrera's litigation team may pursue in the recently filed (February 4, 2005) Order re: Phase III Budget.[2]  Three of the seven categories of documents specified in the motion are not within this permissible area.  Therefore, without the necessity of the Warden addressing any of these categories, discovery with respect to the following categories is denied.  The Warden shall respond to the remaining four categories.

<u>Category 1</u>  All documents in possession of the Kern County district attorney's office, and the Kern County sheriff's office, including all documents in the prosecutor's files in this case, regarding prosecution witness Miguel (Mike) Santana.

In the supporting declaration of Carrera's counsel Stephen Bedrick, Mr. Bedrick explains that these documents may lead to the

---

[1] Records maintained by a state court of its cases are available to Carrera's litigation team as public records.  If any trouble is encountered in obtaining records from the Kern County Superior Court, Carrera should advise this Court.

[2] This order was filed under seal due to the confidential nature of proceedings inherent in the budgeting process.  Not all the information contained in the order, however, is confidential.

discovery of relevant evidence supporting Carrera's claim that his defense counsel was not allowed to conduct adequate cross examination of Miguel Santana at trial. The evidence sought to be uncovered pertains to Miguel Santana's alleged motive to testify falsely against Carrera or to testify inconsistently at the respective trials of Carrera and co-perpetrator Ramiro Ruiz-Gonzales ("Ruiz").[3]

The Court addressed the denial of adequate cross examination claims in the February 4, 2005 Budgeting Order. After undertaking a thorough examination of the claims and arguments in Carrera's Points and Authorities, the Court concluded that no evidentiary development of this category of claims would be permitted. Nothing has transpired since February to alter the view that proving the fact of inadequate cross examination would not entitle Carrera to relief.

The gravamen of Carrera's argument in this category of claims is that his defense counsel, Donnalee Mendez (now Huffman), was not allowed to elicit from Santana whether the source of the information he relayed at Carrera's trial came solely from Carrera, Ruiz, or from both Ruiz and Carrera. He claims that if Santana's testimony was based on Ruiz's statements, in any part, the convictions of robbery and robbery felony murder must be set aside because the statements constituted hearsay and, additionally, violated his rights under the Confrontation Clause of the Constitution. Of concern to Carrera is that absent the ability to fully cross examine Santana, the jury was unaware that his testimony at Carrera's trial was inconsistent from his testimony at Ruiz's earlier trial in two important particulars.

---

[3] Carrera's February 28, 2001 Points and Authorities asserts that the denial of adequate cross examination "variously resulted from trial court error, and/or prosecutorial misconduct, and/or ineffective assistance of counsel." 2/28/01 Ps & As, p. 108.

The first was whether <u>Ruiz</u> asked Santana if he (Santana) had the "guts" or nerve to kill someone, which is how Santana testified at Ruiz's trial, or, whether <u>Carrera</u> asked Santana the "guts to kill" question, which is how Santana testified at Carrera's trial. The second is whether Ruiz went into the kitchen to obtain a larger knife during the attack on victim Jack Hayes, as Santana testified a Ruiz's trial, or whether it was Carrera who went into the kitchen to obtain a larger knife, as the prosecutor argued at Carrera's trial.[4]

The inquiry need be pursued no further. As the Court previously observed, from careful examination of the transcripts of Ruiz's and Carrera's trials, Santana's testimony at Ruiz's trial was based on what Santana said <u>Ruiz</u> told him, and his testimony at Carrera's trial was based on what he said <u>Carrera</u> told him. June 22, 2000 Ord., p. 11; October 4, 2004 Ord., pp. 12-13. The Court further discerns that Carrera's trial counsel, Mrs. Huffman, preserved no objection to the challenged trial court ruling barring cross examination. In fact, it was Mrs. Huffman' objection to the prosecutor's questioning Santana about what Ruiz said that prompted the court ruling Carrera now challenges. The sustaining of Mrs. Huffman's objection prevented the prosecutor from eliciting statements from Santana which were attributable to Ruiz, precisely the result sought by Mrs. Huffman. *See* RT-2: 162; RT-13: 1720. In any event, the bases for Carrera's current allegation of prejudice, namely the source of the "guts to

---

[4] The Court previously explained in the October 4, 2004 Order that Santana's testimony at Carrera's trial was ambiguous as to who obtained the larger knife. Based on this ambiguous testimony, the prosecutor argued on summation that Santana said it was Carrera who obtained the larger knife. At Ruiz's trial, in contrast, Santana clearly testified that Ruiz went into the kitchen to obtain the larger knife, and the prosecutor so argued.

kill" question and the identity of the perpetrator who obtained the larger knife, already have been addressed in Carrera's favor when the Court recognized prosecutorial overreaching and misconduct in its discussion of Claims 2, 2A, and 44 in the October 4, 2004 Order granting Carrera summary judgment on those claims.

Carrera's present discovery request adds a new dimension to the inadequate cross examination claim, that is, a potential ill-motive Santana may have had to testify falsely at Carrera's and/or Ruiz's respective trials. Evidence of a bad motive on Santana's part, however, is not an issue Carrera previously raised in his moving papers. Nor are there any other facts Carrera has brought to the Court's attention to support the notion that Santana testified as he did for some ill-motive. Mr. Bedrick's supporting declaration in this regard is telling. He characterizes the discovery sought as information which "may lead to relevant evidence," not that it is relevant itself. In characterizing the supposed good cause for discovery, as required by Rule 6(a) of the Rules Governing § 2254 Cases, in this manner, Carrera demonstrates that he perceives discovery available on habeas corpus as ordinary civil litigation discovery. This is not the case.

Rule 6(a) of the Rules Governing § 2254 Cases provides in pertinent part: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Good cause under this standard is established where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he . . . is entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300 (1969), *quoted in* Advisory Committee Note

1  to Rule 6; *Bracey v. Gramley*, 520 U.S. 899, 908-09 (1997).  The
2  present discovery request does not meet this requirement.  The request
3  for prosecution file documents regarding Miguel Santana is denied.
4  <u>Category 2.</u>  Petitioner requests that the Kern County Superior Court
5  and/or the prosecution make available for examination, including
6  scientific, microscopic, and chemical analysis, the piece of unburned
7  alleged corduroy material in People's Exh. #186 and/or #190.

8      Mr. Bedrick's supporting declaration recites the underlying
9  contention for this discovery request, namely that jury misconduct
10 occurred when jury members, during deliberations, manually pulled
11 apart pieces of partially burned (and melted together) clothing they
12 were given to examine.  In the process, they apparently discovered
13 some material consistent with the description of corduroy pants said
14 to have been worn by Carrera on the night of the robbery and murders.
15 The unburned corduroy material is characterized in Carrera's February
16 28, 2001 Points and Authorities as extraneous evidence.  Carrera
17 further alleges that the juror misconduct claim then took on the
18 mantle of prosecutorial misconduct when the jurors told the prosecutor
19 after the trial what they had discovered, but neither they nor the
20 prosecutor ever told defense counsel.

21     In the Court's February 4, 2005 Budgeting Order, Carrera's
22 request to investigate and develop evidence supporting this claim was
23 denied, and nothing is presently offered to change that disposition
24 regarding discovery. First, Carrera offers no support for the notion
25 that physical evidence given jurors to examine during deliberations
26 assumes the character of extraneous evidence when the jurors actually
27 and carefully examine it.  Thus, the claims that juror misconduct or
28 prosecutorial misconduct occurred is highly questionable.

Second, even if Carrera were to prevail in showing misconduct, the result would be to cast doubt on the already determined fact that he was present at the scene of the crime where Mr. and Mrs. Hayes were robbed and murdered.  In both the June 22, 2000 and October 4, 2004 orders, the Court determined that Carrera was present.  June 22, 2000 Ord., pp. 45-47, 51; October 4, 2004 Ord., pp. 60-63.  This determination was made without regard to evidence that some material available to the jurors for examination was of a similar nature to the fabric of Carrera's corduroy pants.  Any conclusion drawn by jurors that fabric evidence connected Carrera to the crime was cumulative, at best.

Third, and finally, an inextricable part of Carrera's argument is a description of how jurors purportedly deliberated based on evidence they had before them.  Evidence of the deliberative process, however, is inadmissible in federal proceedings.  Fed. R.Evid., Rule 606(b).  Discovery relative to burned material examined by the jurors is denied.

<u>Category 3</u>.   All documents in possession of the Kern County Superior Court, the Kern County district attorney's office, the Kern County sheriff's office, and the Attorney General's office of the State of California, other than those previously supplied by Petitioner in this case, regarding whether the personal life and financial situation of trial counsel Donnalee Mendez [Huffman], as described in Petitioner's February 28, 2001 memorandum sec. XXXI, pp. 215-223, presented any obstacles to the preparation of trial in this case.  This request includes, but is not limited to (a) all records of any request for compensation by her as court-appointed counsel between the times of January 1, 1982, and December 31, 1983; (b) all requests and motions

by Ms. Mendez for court authorization and/or payment for investigators and/or experts, and/or co-counsel fees during that period, and (c) notes in the prosecutor's files regarding any discussions regarding delays or continuances of the subject trial.

Mr. Bedrick's supporting declaration reiterates the argument in Carrera's Points and Authorities that Mrs. Huffman's personal financial difficulties caused her to go to trial before she was properly prepared.[5]  Under this theory, Mrs. Huffman's financial reimbursement requests sought in discovery would tend to prove Carrera's claim that Mrs. Huffman needed money, and, in order to receive reimbursement, agreed to go to trial without being fully prepared.

Although no conclusion on the propriety of discovering Mrs. Huffman's reimbursement requests has been made, the Court has already generally addressed the propriety of investigation into Mrs. Huffman's personal finances.  Again, nothing now offered indicates that this prior determination should be revisited.

According to Carrera, the alleged lack of trial preparation manifested itself in two ways.  First Mrs. Huffman failed to develop a mental health defense.  Second, she did not note inconsistencies in the testimony of the same witnesses between the respective trials of Carrera and Ruiz (notably Miguel Santana's inconsistent testimony). Moreover, she accepted appointment in another felony case (for which

---

[5] Separately, Carrera argues a conflict of existed because Mrs. Huffman represented Carmen Santana (Miguel Santana's sister) in dissolution proceedings and therefore had divided loyalties.  The alleged conflict of interest on this ground is not relevant to the present discovery request.

she was compensated) which interrupted her preparation for Carrera's trial from October 1982 through May 1983.

As the Court stated in its February 4, 2005 Budgeting Order, it is hard to understand how Carrera perceives prejudice from Mrs. Huffman's alleged conflicts in light of the Court's prior ruling and the viability of other claims. It is not necessary to explore Mrs. Huffman's personal or financial problems or even her early and frequent requests for reimbursement in order to bring to light the inconsistencies between Ruiz's and Carrera's trials.[6] The Court already has recognized the problem and rendered a ruling favorable to Carrera in the October 4, 2004 Order. No further evidentiary development need be pursued. With respect to Mrs. Huffman's failure to develop a mental state defense, the Court has given Carrera the green light to explore this area, particularly with respect to Carrera's drug use (or abuse).[7] If Carrera is successful in showing that a drug or other mental incapacity defense could have altered the outcome of the robbery verdict, then relief will follow, without delving into Mrs. Huffman's personal or financial affairs. For this reason, the Court previously ruled that no investigation into these matters would be permitted. The ruling stands and applies to Carrera's discovery efforts as well.

---

[6] It is possible one of the parties may wish to introduce Mrs. Huffman's trial billing statements and reimbursement requests to show what professional efforts were undertaken on Carrera's behalf.

[7] This subject matter is covered by another category of documents specified by Carrera in the present discovery motion.

In light of the foregoing, the Court denies discovery with respect to each of the following categories of evidence specified in Carrera's motion for leave to conduct discovery:

1. All documents in possession of the Kern County district attorney's office, and the Kern County sheriff's office, including all documents in the prosecutor's files in this case, regarding prosecution witness Miguel (Mike) Santana;

2. Petitioner requests that the Kern County Superior Court and/or the prosecution make available for examination, including scientific, microscopic, and chemical analysis, the piece of unburned alleged corduroy material in People's Exh. #186 and/or #190; and

3. All documents in possession of the Kern County Superior Court, the Kern County district attorney's office, the Kern County sheriff's office, and the Attorney General's office of the State of California, other than those previously supplied by Petitioner in this case, regarding whether the personal life and financial situation of trial counsel Donnalee Mendez [Huffman], as described in Petitioner's February 28, 2001 memorandum sec. XXXI, pp. 215-223, presented any obstacles to the preparation of trial in this case.  This request includes, but is not limited to (a) all records of any request for compensation by her as court-appointed counsel between the times of January 1, 1982, and December 31, 1983; (b) all requests and motions by Ms. Mendez for court authorization and/or payment for investigators and/or experts, and/or co-counsel fees during that period, and (c) notes in the prosecutor's files regarding any discussions regarding delays or continuances of the subject trial.

1   With respect to the remaining four categories of documents sought
2 be discovered, the Warden is directed file an opposition or responsive
3 brief no later than August 5, 2005.
4
5 IT IS SO ORDERED.
6 **Dated:   July 12, 2005**                    /s/ Anthony W. Ishii
   c508d4                                   UNITED STATES DISTRICT JUDGE
7